Original

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Cheryl D. Uzamere,

                Plaintiff,

- against-

George W. Bush, Condoleeza Rice, Michael Mukasey, Michael Chertoff, Dr. Emilio T. Gonzalez, Julie Myers, The United States of America, United States Department of State, United States Department of Justice, United States Department of Homeland Security, United States Department of Citizenship and Immigration Services, a.k.a United States Immigration and Naturalization Service, United States Department of Immigration and Customs Enforcement, the United States Social Security Administration, Allen E. Kaye, Harvey Shapiro, Esq. and Jack Gladstein.

                Defendants.

**GARAUFIS, J.**
Civil Action No.: **BLOOM, M.J.**
COMPLAINT
JURY TRIAL DEMAND **08 891**



USMS RECEIVED FEB 2 2008 PRO SE OFFICE

Plaintiff Cheryl D. Uzamere, appearing on her own behalf, states and alleges the following:

## INTRODUCTION, JURISDICTION AND VENUE

### Introduction

1) On or after February, 1980, Plaintiff filed a complaint with the federal agency formerly known as the United States Immigration and Naturalization Service (hereinafter "INS). Plaintiff filed the complaint in response to what she believed to be a green-card-scam marriage in which her husband, immigrant/beneficiary Ehigie Edobor a.k.a. "Godwin" Uzamere (hereinafter "the husband) abandoned the Plaintiff who was pregnant with his daughter at the time that the husband and his immigration attorneys, Harvey Shapiro and Allen Kaye, tricked Plaintiff into signing sponsorship papers to enable the husband to obtain lawful permanent residence in the United States.

2) Plaintiff signed said sponsorship papers on or around Wednesday, November 28, 1979, one week after the marriage. At the date and time of the marriage, Plaintiff did not know that the husband was an alien who had not obtained lawful permanent residence in the United States. Plaintiff was unfamiliar with any and all aspects of immigration law during her brief courtship with the husband. Additionally, Plaintiff did not realize at the time of the marriage that the name "Godwin Uzamere" used on the marriage license, certificate and officiant statement was fictitious.

3) That during Plaintiff's brief courtship, the husband met Plaintiff's family such that Plaintiff's family recognizes the husband by both names.

4) That the husband, with the help of immigration attorneys Allen Kaye and Harvey Shapiro, enlisted the cooperation of the INS to change the husband's name from the fictitious name "Godwin Uzamere," to the real name "Ehigie Edobor Uzamere."

5) The illegal disparity created by the husband's use of the two names subsequently created an illegal loophole that allowed various governmental agencies' not to view "Godwin Uzamere" and "Ehigie Edobor Uzamere" as the same person.

6) After Plaintiff sponsored the husband, Plaintiff was never contacted by the INS to meet with any immigration official for an interview to determine whether the marriage was a convenience marriage, in violation of Title 8 of the United States Code.

7) Up to and including the present time, no federal agency has reported or even acknowledged the illegal disparity that the husband and his attorneys caused by allowing two different names to exist on the aforementioned documents. Furthermore, no federal agency has reported the existence of the illegal disparity caused by the husband, in violation of Title 18 U.S.C. §4, regarding the misprision of a felony.

8) Up to and including the present time, no federal agency has reported the commissions of any of the husband's crime to the Nigerian government, where the husband is a senator.

9) Plaintiff contacted Defendant the United States Department of State (hereinafter "DOS") to obtain the telephone number of Nigeria's president and Nigerian law enforcement agencies to report the husband's crime of bigamy to the Nigerian government.

10) The Defendant DOS along with the aforementioned Defendants have refused to provide Plaintiff with contact information for the aforementioned entities, thus preventing the Plaintiff from identifying "Godwin Uzamere" and "Ehigie Edobor Uzamere" as the same person.

11) The existence of 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, the fictitious social security that the husband used and was later located by the New York City Department of Social Services' Bureau of Child Support Enforcement, and 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, the number under which the husband owes a student loan is prima facie evidence that various governmental agencies failed to view "Godwin Uzamere" and "Ehigie Edobor Uzamere" as the same person.

12) In or around August, 1980, officials from Defendant the INS visited Plaintiff's apartment at 500 Herzl Street for the purpose of verifying Plaintiff's allegations.

13) In spite of prima facie evidence that the husband never lived with the Plaintiff, Defendant the INS allowed the husband to retain his permanent residence and years later, naturalized the husband as a lawful U.S. citizen while the husband was married to two women at the same time.

14) None of the Defendants ever filed a complaint with reference to the commission of any of the husband's crimes listed above; nor was the husband ever prosecuted by any federal agency because of husband's commissions of the aforesaid crimes.

15) During Plaintiff's pregnancy and throughout the entire life of Plaintiff's minor child, no federal agency to which the Plaintiff petitioned, filed any formal complaint regarding the abandonment of the Plaintiff and the minor child by the husband; nor did any federal agency legally responsible for the enforcement of child support file any complaint regarding the abandonment of the Plaintiff and the minor child by the husband, in violation of Title 18 U.S.C. §4, misprision of felony, and/or any relevant federal statutes that existed at the time of the husband's commissions of the aforesaid crimes.

16) That several months after Plaintiff was abandoned by the husband, Plaintiff visited the office of a "Mr. Sava" who worked for Defendant the INS to file a complaint that the husband abandoned her after being sponsored for lawful permanent residence. Sometime later, Plaintiff received a letter from Mr. Sava stating that "Ehigie Edobor Uzamere entered the port of New York, New York, January 28, 1980 as a lawful permanent resident." However, the INS never made any attempt to report the husband's abandonment of her and the minor child or to assist in reporting what appeared to Plaintiff to be a prima facie case of marriage fraud, in violation of Title 8 U.S.C. §1325(c), marriage fraud, and in violation of U.S. Code Title 18 U.S.C. §4, misprision of felony, and/or other relevant federal statutes that existed at the time of the husband's commission of the aforesaid crimes.

17) In 1982, unbeknownst to the Plaintiff, the husband married a Nigerian woman named Iriagbonse Irowa.

18) On or around October 1, 2003, the Plaintiff received a letter from the husband's attorney Jack Gladstein, in which Jack Gladstein asked for Plaintiff's cooperation to participate with the husband in an "amicable divorce"; the aforementioned letter is the husband's tacit admission that he was still married to Plaintiff and Iriagbonse simultaneously.

4

19) After Plaintiff sent Jack Gladstein two letters demanding documentation verifying the identity of the husband, and a letter to the Grievance Committee regarding what Plaintiff considered to be an illegal/unethical act, the aforesaid attorney informed Plaintiff that he would no longer represent the husband. However, Mr. Gladstein never sent the Plaintiff any documentation verifying the identity of the husband.

20) According to Kathie Baker of the United States Department of State, Plaintiff's husband is a naturalized U.S. citizen; said naturalization having been obtained while the husband was presently engaged in the crime of bigamy.

21) Plaintiff contacted the Defendants by telephone, e-mail and fax concerning her knowledge of various violations committed by the husband that Title 8 of the United States Code describes as crimes of moral turpitude, and that husband's commission of said crimes took place before during and after the husband was naturalized by the Defendant the INS.

## JURISDICTION AND VENUE

22) This Court has jurisdiction over this matter based on 28 U.S.C. 1332(a) since the amount requested by plaintiff is in excess of $75,000.00.

23) This Court also has jurisdiction over this matter pursuant to Title 28 U.S.C. 1331, which states that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

## EQUITABLE TOLLING

24) Plaintiff has been unable to secure her husband's immigration records due to the Federal Privacy Act.

25) Plaintiff alleges that in the case of the child of the marriage, the husband's abandonment of the child and subsequent refusal to pay child support took place over a 21-year-

5

period, so that any imposition of a statute of limitations would be unduly harsh, prejudicial in favor of the Defendants and not in the best interest of justice.

26) Plaintiff alleges that contained in the husband's federal records are documents were signed by the Plaintiff, and that said documents have been intentionally withheld by the Defendants to hide the felonious relationship that the husband and his immigration attorneys have with various employees of the Defendants, and to hide prima facie evidence that the husband's immigration attorneys showed the husband how to defraud the Plaintiff in order to circumvent the "spirit of the law" while satisfying the "letter of the law," and that the husband's divorce attorney emulated the immigration attorney's course of conduct by preparing to present to the Court the husband's fictitious name, and refusing to provide to the Plaintiff, evidence of the husband's real identity.

27) Plaintiff further alleges that, based on the lack of response from all the Defendants, that Plaintiff's faxes regarding her complaints of the husband's crimes were intentionally misplaced or discarded by the Defendants, so that reliance on the Defendants to produce said records of complaints may be an exercise in futility for the Court. Plaintiff believes that telling the Defendants about the existence of her well-documented websites, namely, http://africandiasporal.tripod.com/thecriminalandimmoralactsofchiefehigieedoborakagodwinuzamere, http://getjusticeforanamericanschvartze.tripod.com, http://www.youtube.com/cuzamere and http://www.myspace.com/cuzamere, and the Defendants refusal to report or act on the irrefutable evidence of the husband's crimes as contained in said websites is sufficient proof for this Court to establish the veracity of the Plaintiff's allegations.

28) The action of each of the Defendants by failing to provide an accounting to the Plaintiff as to their failure to report Plaintiff's complaints regarding the husband and the commission of the husband's crimes constitutes a continuing tort that tolls the statute.

## COUNT I -- VIOLATION OF TITLE 18 U.S.C. §4
## MISPRISION OF FELONY

27) Plaintiff alleges that the Defendants failed to act in a manner that guaranteed that Plaintiff's complaint regarding her husband's crimes was reported to the appropriate government agency or agencies that existed during that time that the Defendants received said complaints.

28) Plaintiff alleges that the Defendants' failure to report the husband's crimes of moral turpitude to the appropriate governmental agencies has inflicted great mental and emotional distress on Plaintiff.

29) Plaintiff alleges that the Defendants continued their acts of misprision of the husband's felonies by refusing to report the husband's violation of the New York State Penal Code, Section 175.35, offering a false instrument for filing in the first degree; said felony a form of fraud that is viewed by Title 8 of the United States Code as a crime of moral turpitude.

30) Plaintiff alleges that the Defendant continued their acts of misprision of the husband's felonies by failing to report the husband's violation of the New York State Penal Code, Section 260.05, non-support of a child in the second degree; said crime that, although a misdemeanor, is viewed by Title 8 of the United States Code as a crime of moral turpitude.

31) Plaintiff reiterates and re-alleges the same allegation of Defendants' misprision of the husband's felonies regarding every crime so enumerated with the same force.

32) Plaintiff alleges that up to and including the present, Defendants continue to conspire to pretend not to view the names "Godwin Uzamere" and "Ehigie Edobor Uzamere as both belonging to the husband.

7

33) Plaintiff alleges that up to and including the present, the Defendants continue to conceal the husband's simultaneous marriages from other federal agencies, from the public, and have failed to work with the foreign government where the husband is employed as a senator so as to bring the husband to justice.

34) Plaintiff further alleges that the Defendants have formed an illegal alliance with the husband's immigration attorneys Allen Kaye, Harvey Shapiro and Jack Gladstein by hiding the illegal disparity that was created by the husband's use of the names "Godwin Uzamere" and "Ehigie Edobor Uzamere; said disparity further exacerbated by the assistance of the husband's attorneys Allen Kaye and Harvey Shapiro; that the aforesaid attorneys continue to allow the disparity to exist by not reporting it in a manner that would precipitate an criminal investigation of the husband; and that the aforesaid attorneys continue to allow the disparity in the husband names to exist by withholding documentation from the Plaintiff so as to prevent the Plaintiff from verifying the husband's identity.

## COUNT II – VIOLATION OF TITLE 18 U.S.C. §1961 – §1968
## RACKETEERING INFLUENCED AND CORRUPT ORGANIZATION ACT

35) Plaintiff alleges that based on several occasions in which various African American women alleged to have been victims of green-card-marriage scams perpetrated by Nigerian men, that the federal Defendants, with the help Allen E. Kaye, Harvey Shapiro and Jack Gladstein have established an illegal enterprise in which the aforesaid Defendants attorneys show Nigerian immigrants how to trick African American women into marriage, trick them into signing the sponsorship applications, and then direct them to divorce attorneys who circumvent the spirit of the Federal Patriot Act, which requires financial institution to demand governmental identification. Defendant attorneys, with the help of those federal Defendants concerned with immigration and naturalization matters then "fast-track" the applications so as to ensure that

8

Nigerian immigrants' applications/requests for permanent residence are quickly granted without the applications being questioned or scrutinized.

36) Plaintiff further alleges that Defendants' participation in the enterprise of falsifying the applications of Nigerians seeking permanent legal residence is in violation of federal laws identified as "RICO" laws and further violates Title 18 U.S.C. §4, regarding the misprision of felony.

## COUNT III – VIOLATION OF THE CIVIL RIGHTS ACT

37) Plaintiff alleges that the Defendants frequently work in concert with attorneys of a specific ethnocentric group that have more political power than do the African American women who have been victimized by the clients of the aforesaid attorneys; that the fraudulent marriages that are the product of a conspiracy by the immigration lawyers of said ethnic group and their Nigerian clients intentionally target African American women because of the low social status that has been forcibly placed on African American women by members of the Defendant attorneys' ethnic group.

38) Plaintiff further alleges that a disproportionate percentage of the attorneys with whom the Defendants engage in the enterprise of illegal immigration belong to an ethnic group that teaches that blacks are meant to be enslaved; and that said doctrine, while not the cause, is used by attorneys of said ethnic group to rationalize the abuse of African American women in much the same manner as it was used to rationalize the enslavement of African slaves, that is, for financial enrichment.

## COUNT IV – VIOLATION OF H.R. 3162, SEC. 326
## THE PATRIOT ACT
## VERIFICATION OF IDENTIFICATION

39) Plaintiff states that although the aforesaid statute specifically applies to banks, the Court should not misconstrue the law to imply that federal agencies and attorneys, who are officers of the Court, can circumvent the "spirit of the Patriot Act" by allowing immigrant clients to present falsified names or other false information to them that may eventually be submitted to the Court as true.

40) Plaintiff states that proof of the aforementioned statement is reflected in New York State Penal Code, Section 175.35, offering a false instrument for filing in the first degree; said felony a form of fraud that is viewed by Title 8 of the United States Code as a crime of moral turpitude; and as such, is consistent with the "spirit" of the Patriot Act.

41) Plaintiff further states that in the best interest of justice, the Court must not misconstrue Plaintiff's unfamiliarity with the finer point of federal law in a way that would allow the Defendants' the opportunity to misapply the law, or for the Defendants to rely on the Court to misapply the law in such a manner that the "letter of the law" is obeyed, but the "spirit of the law" is not. Plaintiff states that the Court must obey the entire law whether Plaintiff knows it or not.

## COUNT V – VIOLATION OF THE FEDERAL REHABILITATION ACT OF 1973
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

42) The Federal Rehabilitation Act of 1979 holds that it is illegal for any agency that received federal funding to discriminate against an individual based solely on the individual's status as being mentally ill. Furthermore, not only does the Americans with Disabilities Act prohibit governmental agencies from withholding services from individuals who are disabled, governmental agencies are in fact, required to provide accommodations for said individuals.

43) At points throughout the 28 years in which she petitioned the Defendants for assistance in reporting and prosecuting the husband, Plaintiff alleges that the Defendants intentionally ignored her because of Plaintiff's status as being mentally ill; and that said status was the rationalization Defendants used to regard Plaintiff's complaints as not credible, in spite of Plaintiff's providing Defendants with irrefutable proof of her allegations against the husband.

## COUNT VI -- EXERCISE OF TITLE 28 U.S.C. §1361
## PLAINTIFF'S RIGHT TO SUE TO COMPEL DEFENDANTS TO HALT UNLAWFUL ACTIVITIES

44) Federal statute holds that any citizen has the right to file a lawsuit in the federal courts to obtain a court order requiring a federal official to perform a mandatory duty and to halt unlawful acts is Title 28 U.S.C. § 1361. A responsible citizen had a responsibility to report criminal activities using this statute: "Action to compel an officer of the United States to perform his duty. The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

## DEMAND FOR AN ACCOUNTING

45) Plaintiff, on her own behalf, re-alleges as if fully set forth, each and every allegation contained in the preceding paragraphs.

46) WHEREFORE, Plaintiff demands judgment (a) to require Defendants to make a full disclosure of the identity and documentation of the husband to the Plaintiff; (b) to set aside the Federal Privacy Act insofar as Plaintiff's demand for said documentation is based on crimes already committed and presently in commission by the husband; (c) to consolidate all of Plaintiff's husband's documents help under the fictitious named "Godwin Uzamere" with all federal files and relevant documentation held under the husband's named "Ehigie Edobor

11

Uzamere"; (d) to perform a countrywide criminal investigation of the husband to ensure that he does not have fictitious identities within U.S. boundaries; (e) to require the husband to return to the United States to face trial; (f) to denaturalize the husband based on prima facie evidence presented by Plaintiff of the husband's crimes; (g) to provide Plaintiff with the name of Nigerian officials and/or agencies to allow Plaintiff to file a complaint in Nigeria; (h) to compel the Defendants to provide the Nigerian government with a copy of Plaintiff's complaint; (i) to compel the Defendants to immediately provide the Nigerian government with already-proven facts, including proof that Plaintiff's husband and Senator Ehigie Edobor Uzamere are one and the same person; (j) to launch an investigation on all Defendant attorneys to determine the following: (1) the accounting of number of Nigerian men who received green-card-marriage-sponsorship services and divorce services; (2) the number of Nigerian men who received green-card-marriage-sponsorship and divorce services from the same defendants; (3) the name of the judge(s) who oversaw the proceedings; (4) the nationalities of the women who married and then divorced their Nigerian husbands; (4) whether the divorces were contested or uncontested; (5) if the marriage resulted in children; (6) if there were children of the marriage, whether the children received child support from the Nigerian father; (k) and to financially compensate Plaintiff with 100,000,000.00 for 28 years of mental and emotional distress.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands a jury trial and judgment and damages against the Defendants, jointly, severally and/or in the alternative, as follows:

a)  Access to all federal records of the husband;

b)  $100,000,000.00 in punitive damages as a result of Defendants intentional infliction of emotional/mental distress upon the person of the Plaintiff.

c) For a full-fledged criminal investigation against the husband;

d) To be apprised of all stages of the criminal investigation as a victim of the husband's crimes and to be viewed by the Defendant's as a crime victim.

e) Other issues to be determined during the preliminary conference;

f) For the cost of this action.

**Dated:** February 25, 2008
Brooklyn, New York

By: *[signature: Cheryl D. Uzamere]*
Cheryl D. Uzamere
1209 Loring Avenue
Apt. 6B
Brooklyn, NY 11208
Tel.: (718) 647-8370
Cell: (347) 596-2165
Fax: (267) 543-3317
E-mail: cuzamere@netzero.net